IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN SULLIVAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-2000-L** |
| | § | |
| **STATE FARM LLOYDS, PACIFIC** | § | |
| **COAST INVESTMENT COMPANY, and** | § | |
| **PACIFIC COAST INVESTMENT,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant State Farm Lloyds' Motion for Summary Judgment, filed November 14, 2006; Plaintiff's Objections to Defendant State Farm Lloyds' Exhibits Attached to State Farm Lloyds' Motion for Summary Judgment, filed December 14, 2006; and Defendant State Farm Lloyds' Objections to the Summary Judgment Affidavit of John Sullivan, filed December 28, 2006. After reviewing the motions, responses, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendant State Farm Lloyds' Motion for Summary Judgment, **overrules** Plaintiff's Objections to Defendant State Farm Lloyds' Exhibits Attached to State Farm Lloyds' Motion for Summary Judgment, filed December 14, 2006, and **overrules as moot** Defendant State Farm Lloyds' Objections to the Summary Judgment Affidavit of John Sullivan.[1]

---

[1]Several of the filings cited above violate Local Rule 7.2 by exceeding the page limits set for briefs and responses. Briefs are limited to 25 pages, excluding the tables of contents and authorities, and responses are limited to 10 pages. L.R. 7.2. Defendant's summary judgment motion runs 38 pages; Plaintiff's response brief runs 29 pages; Defendant's reply runs 22 pages. No party sought leave of court to exceed page limits. The court frowns upon this abuse of the briefing process, particularly when the court sees no exceptional circumstances necessitating such lengthy briefing, and multiple extraneous arguments made by both parties. The parties are **directed** to follow the court's limitations on briefing in the future, and are hereby noticed that any brief exceeding the page limits submitted without leave of court may be struck for failure to comply with

**Memorandum Opinion and Order – Page 1**

## I. BACKGROUND

This is an insurance dispute brought by Plaintiff John Sullivan ("Sullivan") against two sets of defendants: State Farm Lloyds ("State Farm"), and Pacific Coast Investment Company and Pacific Coast Investment (collectively, "Pacific Coast"). As the events giving rise to this action began nearly six years ago, the court will briefly summarize the relevant facts here, and provide additional details as it addresses each claim and ground for summary judgment. Sullivan and his wife, Frances Sullivan, (collectively, the "Sullivans")[2] owned a home at 4252 Cochran Chapel Road in Dallas, Texas, insured by State Farm. In October 2001, the Sullivans filed insurance claims for mold damage to their home. During the course of an investigation into the damage, State Farm opened a total of four claims and assigned four different claims numbers. In February 2002, while State Farm was still investigating the claims, and before it issued any payments, the Sullivans sold the home to the Cochran Corporation, a company John Sullivan owned as the sole shareholder and president. The sale was financed by a $4 million mortgage from Pacific Coast and another group, and closed on February 19, 2002.

In May 2002, State Farm made two payments for two of the mold claims, totaling more than $381,000, through two checks made payable to John and Frances Sullivan, and Pacific Coast. Both checks were endorsed by all the parties. In April 2003, State Farm issued two more checks, totaling more than $253,000, again made payable to John and Frances Sullivan, and Pacific Coast. This time, however, Sullivan's attorney contacted State Farm asking for Pacific Coast to be removed as

---

the Local Rules.

[2]The court makes multiple references to the Sullivans, jointly, because they originally filed this lawsuit in state court on September 12, 2005, as joint owners of the insurance policy at issue. After the suit was removed to federal court, the Sullivans removed Frances Sullivan as a plaintiff through the First Amended Complaint filed on May 30, 2006. John Sullivan now proceeds as the sole plaintiff in this case.

**Memorandum Opinion and Order – Page 2**

a payee, stating that Pacific Coast was refusing to endorse the checks over to the Sullivans, even though it had no interest in the insurance payments. As State Farm prepared to issue more checks in satisfaction of the mold claims, it had several contacts with Sullivan's attorney. State Farm indicated it would file an interpleader to have a court determine which parties had an interest in the funds, but Sullivan's attorney indicated it would prefer to simply have the checks made payable to all the entities claiming an interest to the funds, including the Sullivans, Pacific Coast, the Cochran Corproation, the Sullivans' contractor and hired adjuster. State Farm agreed, initially, to keep the matter out of court, but after the Cocrhran Corporation filed for Chapter 11 bankruptcy, and Pacific Coast notified State Farm that it claimed an interest in the insurance proceeds, State Farm filed an interpleader action in the bankruptcy case on September 25, 2003, and later placed $1,163,982.62 worth of insurance proceeds into the registry of the bankruptcy court.

The Sullivans opposed the interpleader, filed motions in the bankruptcy court opposing the deposit of the funds into the court's registry, asked the bankruptcy court to dismiss State Farm's interpleader, and opposed State Farm's motion for discharge. By May 2004, however, the Sullivans signed an agreed order stipulating that the interpleader was proper, and that State Farm was a mere stakeholder that was entitled to a discharge from further claims to the insurance funds. The Sullivans also signed an agreed order to take nothing from the court's distribution of the funds, which included payments of $375,972 to Pacific Coast, $500,000 to the Cochran Corporation, and the remainder to the contractor and hired adjuster.

The Sullivans filed this suit against State Farm and Pacific Coast on September 12, 2005, in state district court. State Farm removed the action to this court on diversity grounds on October 7, 2005. The First Amended Complaint, which removed Frances Sullivan as a plaintiff, is the live

pleading in this suit. Sullivan brings three claims against State Farm: (1) breach of contract, in violation of Texas Insurance Code, article 21.55, for failing to pay the entire amount of insurance benefits under the policy[3]; (2) violations of The Texas Insurance Code, article 21.21, for engaging in unfair or deceptive acts[4]; and (3) violations of the Texas Deceptive Trade Practices Act ("DTPA") for failure to effectuate a prompt, fair and equitable settlement of his claim. The fourth and final claim asserted by Sullivan in the First Amended Complaint is one for tortious interference against Pacific Coast. As State Farm has filed this summary judgment motion, the court does not address Sullivan's claim against Pacific Coast in this order. Before the court analyzes each of State Farm's grounds for summary judgment, it will first set forth the applicable law.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual

---

[3] Plaintiff's First Amended Complaint specifically cites to this article of the Texas Insurance Code; however, Texas has repealed article 21.55 and replaced it with Tex. Ins. Code Ann. § 542.057. All future references to violations of this portion of the Texas Insurance Code will refer to this revised statute.

[4] Plaintiff's First Amended Complaint specifically cites to this article of the Texas Insurance Code; however, Texas has repealed article 21.21 and replaced it with Tex. Ins. Code Ann. § 541.060. All future references to violations of this portion of the Texas Insurance Code will refer to this revised statute.

**Memorandum Opinion and Order – Page 4**

record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. ANALYSIS

### A. Introduction

At the outset, the court points out that the statutory violations of the insurance code and DTPA claimed by Sullivan cover a broad range of conduct labeled generally as deceptive or unfair practices.[5] In addressing Sullivan's claims, State Farm refers to these statutory violations as claims for "bad faith." Defendant State Farm Lloyds' Motion for Summary Judgment ("Def. Br.") at 8. Even though Plaintiff's First Amended Complaint merely recites the elements of each statutory violation and does not clearly state how State Farm has violated these statutes, both Plaintiff and State Farm's summary judgment briefs argue that the "bad faith" conduct at issue is State Farm's inclusion of Pacific Coast as a payee on the insurance checks. The court will proceed with its analysis accordingly.

State Farm raises several grounds for summary judgment. First, it contends that all of Sullivan's breach of contract and bad faith claims are barred by collateral estoppel, because the agreed order issued by the bankruptcy court determined that the prior interpleader action was properly filed. Second, State Farm argues that all of Sullivan's claims are also barred by a two-year statute of limitations for bringing claims under the Texas Insurance Code and DTPA. Third, State Farm argues that Sullivan's breach of contract claim fails, as a matter of law, because Sullivan can present no evidence that State Farm owes him any benefits under the policy. Fourth, State Farm

---

[5]Provisions under Tex. Ins. Code Ann. § 541.060 for unfair settlement practices mirror the provisions in the Texas DTPA. These unfair practices include misrepresenting material facts or policy provisions related to coverage, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement, and refusing to pay a claim without conducting a reasonable investigation.

**Memorandum Opinion and Order – Page 6**

contends that Sullivan's bad faith claims fail, as a matter of law, because Sullivan can show no evidence that State Farm failed to pay without conducting a reasonable investigation. Finally, State Farm argues that Sullivan is barred from any recovery because he has no evidence showing that he suffered any damages as a result of State Farm's refusal to remove Pacific Coast as a payee on the insurance checks. The court will address each of these arguments individually.

### B. Collateral Estoppel

State Farm argues that collateral estoppel bars Sullivan from now bringing his claims for breach of contract or bad faith violations of the Texas Insurance Code and DTPA, because these issues were already litigated and resolved through the agreed order on State Farm's interpleader action in bankruptcy court. Def. Br. at 10. Sullivan argues that collateral estoppel does not apply because the only issue resolved by the interpleader was State Farm's liability with respect to the interpled insurance proceeds, and Sullivan has asserted broader claims of bad-faith conduct and breach of contract for unpaid policy benefits. Plaintiff's Brief In Response to State Farm Lloyds' Motion for Summary Judgment ("Pl. Br.") at 3-4. The court agrees with State Farm that Sullivan's statutory claims for bad faith conduct are barred by collateral estoppel; however, collateral estoppel will not bar Sullivan's breach of contract claim.

Collateral estoppel precludes the relitigation of issues actually adjudicated, and essential to the judgment, in a prior suit between the parties on a different cause of action. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir. 2000). In a diversity suit, the forum state's law governs the collateral-estoppel effect of a prior state-court judgment. *See*, *e.g.*, *Breeland v. Security Ins. Co. of New Haven, Conn.*, 421 F.2d 918 (5th Cir. 1969). Under Texas law, whether the doctrine of collateral estoppel applies to a specific issue depends upon whether "the fact determined in the prior

suit was essential to the judgment in the prior suit, and whether the necessary requirement of privity exists between the parties." *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 176 (Tex. App.–El Paso 1996, writ denied). Furthermore, a party may assert affirmative defenses of res judicata or collateral estoppel "regardless of whether the underlying judgment was an agreed judgment or a judgment rendered after a fully adversarial trial to a fact finder." *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 888 (Tex. App.–Dallas, 2001, pet. denied); *Forbis v. Trinity Universal Ins. Co. of Kansas, Inc.*, 833 S.W.2d 316, 319 (Tex. App.–Fort Worth 1992, writ dism'd) ("An agreed judgment is more than a mere contract. It has the same degree of finality and binding force as one rendered by a court at the conclusion of adversary proceedings.") (internal citations omitted). Additionally, Sullivan cites federal case law holding that a party pleading collateral estoppel based on a prior consent judgment must prove through the record of the prior case, or through extrinsic evidence, that the parties *intended* the consent judgment to operate as a final adjudication of a particular issue. Pl. Br. at 3, citing *Balbirer v. Austin*, 790 F.2d 1524, 1527 (11th Cir. 1986) (emphasis supplied). This intent requirement is not found under Texas law, which governs the collateral-estoppel effect of the agreed judgment in this case; however, the court believes that even if it takes the parties' intent into consideration, Sullivan's bad faith claims are still barred by collateral estoppel.

In this case, the parties do not dispute that the required element of privity is satisfied; they only argue over whether Sullivan's bad faith claims against State Farm were conclusively decided by the prior judgment. Sullivan contends that the agreed judgment from the interpleader proceeding only discharged State Farm from claims specifically asserted by the interpleader defendants against the interpled insurance proceeds. Pl. Br. at 3. Sullivan argues that the judgment does not preclude

**Memorandum Opinion and Order – Page 8**

this action, which asserts that State Farm's handling of the claims process was conducted in bad faith, or that State Farm's bad-faith conduct created the multiple claims in the first place. *Id.* at 3-4. State Farm, on the other hand, contends that the issue of bad faith was necessarily decided by the prior judgment, because Sullivan stipulated that the interpleader was proper, and that Pacific Coast was entitled to a portion of the insurance funds, while the Sullivans took nothing. Reply Brief to Plaintiff's Response to Defendant State Farm Lloyds' Motion for Summary Judgment ("Def. Reply") at 3. The court determines that the Sullivans' stipulation that the interpleader action was proper now precludes them from bringing their bad faith claims in this action.

In the Agreed Order on Interpleader State Farm Lloyds' Motion for Discharge of Stakeholder ("Agreed Order"), the Sullivans specifically stipulated that:

> A. This adversary proceeding (the "Interpleader") is a proper interpleader action, and the court has jurisdiction over the subject matter of this adversary proceeding and over all of the Parties hereto.
> B. State Farm is a mere stakeholder with no interest in the $1,163,982.62 (the "Property") deposited into the Registry of the court pursuant to this Interpleader action.
> C. State farm is entitled to be and should be discharged from this Interpleader action and from further liability to the Interpleader Defendants for claims affecting the Property.

Agreed Order, Def. App. at 168-69. Prior to the entry of this order, the Sullivans argued in a motion to dismiss State Farm's interpleader complaint that the bankruptcy court lacked jurisdiction over the proceeding. Def. App. at 150-51. The Sullivans also argued in a separate filing opposing State Farm's discharge as a mere stakeholder that, even if the interpleader was properly invoked, the court must decline a discharge if "the stakeholder is independently liable" for tortious handling of the policy proceeds or other misconduct. Def. App. at 162. In short, the Sullivans demanded that the court adjudicate their assertions "as to an insurer's bad faith." *Id.* In that filing, the Sullivans also

alleged that State Farm's refusal to exclude the *Cochran Corporation* (not Pacific Coast) as a defendant in the interpleader action was in bad faith, since the Cochran Corporation had disclaimed any interest in the insurance proceeds. *Id.* at 164 (emphasis added). "At that point, State Farm need only have filed its interpleader in state court, naming as defendants Sullivan, Benke [the hired adjuster], Belfor [the contractor] and *Pacific* . . . ." *Id.* (emphasis added).

Based on these filings, the court believes that the Sullivans did raise a bad-faith claim against State Farm in the interpleader proceeding in order to prevent State Farm's discharge. The Sullivans, however, conclusively settled this bad-faith claim by stipulating in the Agreed Order that State Farm was a mere stakeholder who was entitled to a discharge. The Sullivans' stipulation to the court's jurisdiction and to the propriety of the interpleader also indicates their intent to conclusively extinguish their bad faith claims. Under Texas law, a party's interpleader action is proper only if (1) the party is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) the party has not unreasonably delayed filing an action for interpleader; and (3) the party has unconditionally tendered the fund or property into the court's registry. *Hanzel v. Herring*, 80 S.W.3d 167, 173 (Tex. App.–Fort Worth 2002, no pet.). In this case, Sullivan contends that State Farm acted unreasonably and in bad faith when it refused to remove Pacific Coast as a payee on the insurance checks. Pl. Br. at 6-7. By stipulating that the interpleader was properly filed, Sullivan had to agree that State Farm was either subject to, or had reasonable grounds to anticipate, rival claims to those insurance proceeds. Finally, by agreeing to a distribution of the interpled funds that included a $375,972 payment to Pacific Coast, but none to the Sullivans, Sullivan has effectively acknowledge that Pacific Coast was a proper party to the interpleader action, and that

State Farm could not have acted in bad faith by including Pacific Coast as a payee on the insurance checks.[6]

Sullivan advances an alternative argument that, prior to the interpleader, State Farm should not have recognized Pacific Coast's claim on the insurance proceeds, and acted in bad faith during that time period. Pl. Br. at 6-14. Sullivan contends that, at the least, he has statutory bad faith claims for State Farm's unreasonable conduct prior to the interpleader, and Sullivan's brief spends pages explaining why he believes Pacific Coast had no clear claim to the insurance proceeds for a period of time prior to September 11, 2003, prior to the interpleader. *Id.* Sullivan cites to a recently overturned case for the proposition that a proper interpleader does not necessarily shield an interpleader insurance company from statutory liability for prior conduct. Pl. Br. at 4, 5-6, citing *State Farm Life Ins. Co. v. Martinez*, 174 S.W.3d 772 (Tex. App.–Waco 2005, pet. granted). In *Martinez*, the appeals court held that an insurer could be liable under Texas Insurance Code 21.55 for failing to timely interplead disputed funds. The Texas Supreme Court reversed that ruling by holding that the insurer was liable under the Insurance Code for failing to pay the claim, but only for the delay prior to filing the interpleader action. *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799 (Tex. 2007). *Martinez* does not control or even guide the court in this case, because, unlike the plaintiff in *Martinez*, the Sullivans were *never* entitled to payment of the insurance proceeds at any time, either prior to or following the interpleader action. The Agreed Order and disbursement of

---

[6]The court also finds Sullivan's argument that State Farm acted in bad faith disingenuous. Before the sale of the house, Sullivan wrote to his State Farm agent on February 7, 2002, stating that Pacific Coast required an endorsement on the homeowners' policy prior to closing, and asked for such an endorsement. Def. App. at 61. Simply because such an endorsement was never written does not mean that State Farm acted in bad faith by including Pacific Coast as a payee on the insurance checks. Sullivan objects to State Farm's inclusion of his letter in its summary judgment evidence; however, the letter amounts to an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2).

**Memorandum Opinion and Order – Page 11**

N/A
N/A
N/A

funds from the intepleader proceeding conclusively established that the Sullivans were not entitled to any payment from the insurance proceeds, but that Pacific Coast was so entitled.[7] Sullivan's alternative argument fails, therefore, because he cannot recover statutory damages for claims that never accrued. In other words, Sullivan cannot recover simply because, for a period of time prior to the interpleader, it may have been unclear whether Pacific Coast had any interest in the proceeds. Accordingly, collateral estoppel bars Sullivan from bringing its statutory claims for bad faith against State Farm.

Collateral estoppel, however, will not bar Sullivan's breach of contract claim against State Farm. One theory of Sullivan's breach of contract claim relates to alleged unpaid additional living expenses. Pl. Br. at 4. The insurance proceeds interpled into the bankruptcy court compensated for mold damage, and were distributed among the homeowner (Cochran Corporation), the mortgagee (Pacific Coast), the repair contractor, and the hired adjuster. Sullivan is asserting that he and his wife were entitled to additional living expenses, which are policy benefits separate from the damage payments. State Farm has provided no evidence that the prior interpleader proceeding fully adjudicated the merits of this separate claim by the Sullivans. Accordingly, collateral estoppel does not apply, and does not bar Sullivan's breach of contract claim for additional living expenses.

### C. Statute of Limitations

Since the court has already determined that Sullivan's statutory claims against State Farm for bad faith conduct are barred by collateral estoppel, it need not address State Farm's arguments that those claims are also barred by the statute of limitations. The court will, however, examine

---

[7]Sullivan's brief recognizes that he cannot claim any portion of the proceeds, and states that "Plaintiff, in the present action, does not assert claims against the interpled insurance proceeds, themselves[.]" Pl. Br. at 4.

**Memorandum Opinion and Order – Page 12**

whether Sullivan's breach of contract claim for additional living expenses is barred by the statute of limitations.

State Farm contends that Sullivan's breach of contract claim and related statutory claim for failing to promptly pay on a policy are barred by a contractual two-year statute of limitations because the cause of action accrued on June 16, 2003, or, at the latest, on August 26, 2003, and this action was not filed until September 12, 2005. Def. Br. at 20. State Farm argues that the cause of action either accrued on June 16, 2003, the day it notified Sullivan that it would not issue any checks without Pacific Coast named as a payee, or on August 26, 2003, the day it notified Sullivan that it was issuing the final payment on his claims, and that it considered the matter closed. *Id.* Sullivan contends that his breach of contract cause of action for additional living expenses did not accrue until April 2004, because State Farm paid the Sullivans' additional living expenses monthly through March 2004. Pl. Br. at 20-21. State Farm admits that it made payments to the Sullivans for living expenses through March 2004, but argues that the August 26, 2003, letter stating that State Farm had closed the case, set the date this cause of action accrued. Def. Reply at 15-16. The court disagrees.

Generally, a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 829 (Tex. 1990). A cause of action for insurance proceeds generally accrues when the insurance company denies the insured's claim. *See*, *e.g.*, *Alvarez v. American Gen. Fire & Cas. Co.*, 757 S.W.2d 156, 158 (Tex. App.–Corpus Christi 1988, no writ). State Farm is arguing that it effectively "denied" the Sullivans' claim for additional living expenses when its August 26, 2003, letter stated that it had closed the case; however, that letter addressed the closing of the mold damage claims and makes no reference to State Farm's payments to the Sullivans for monthly living expenses. *See* Def. App. at

75. Furthermore, State Farm apparently negotiated the payment of living expenses separately from the dispute over which payees to include on the mold damage claims, and continued such negotiations after August 26, 2003. For example, in April 2003, a State Farm representative negotiated the payment of the Sullivans' living expenses through September 2003. Pl. App. at 47. In July 2003, a State Farm representative agreed to pay living expense through November 2003. *Id.* at 48. In November 2003, State Farm acknowledged the Sullivans' request for more living expenses, and stated that it would review the request and provide a response soon. *Id.* at 52-55. At the very least, the court believes there is a genuine issue of a material fact as to when State Farm denied the Sullivans' request for additional living expenses, and when such an action for breach of contract would have accrued. Accordingly, the court determines that Sullivan's breach of contract claim and statutory claim for additional living expenses is not barred by the parties' contractual statute of limitations.

### C. No Evidence of Breach of Contract

State Farm argues that Sullivan's breach of contract and related statutory penalty claims for additional living expenses fails because Sullivan has no evidence showing he is entitled to additional payments. Def. Br. at 21-25. State Farm contends that, under its policy, it was only obligated to pay the Sullivans for additional living expenses[8], "for the reasonable time required to repair or replace the damaged property." *Id.* at 22, citing Def. App. 8-9. Additionally, the policy states that "[i]f you [the insured] permanently relocate, payment will be for the reasonable time required for your household to become settled." *Id.* State Farm states that it paid the Sullivans $29,500 per month

---

[8]"Additional living expense" is defined by the policy as "any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living." Def. App. at 8.

**Memorandum Opinion and Order – Page 14**

for additional living expenses from December 2001 through March 2004, for a total of $909,534.95. *Id.* at 22-23. State farm argues, first, that its payments were more than reasonable, because the Sullivans cannot prove that they necessarily incurred $29,500 per month in additional living expenses. *Id.* at 23. State Farm argues, alternatively, that, since the Sullivans sold the Cochran Chapel residence in 2002 and moved out, permanently, its payments for living expenses through March 2004 covered a more than reasonable amount of time for relocation, and it does not owe Sullivan for any additional payments under the policy, as a matter of law. *Id.* at 23-24. Sullivan argues that State Farm has waived its right to question the necessity of their living expenditures, since it never asked for such verification throughout the time of payments. Pl. Br. at 18-20. Sullivan also argues that a reasonable amount of time for relocation is a question for the jury to decide, since his family did not permanently relocate, and moved back into the Cochran Chapel residence in 2004. *Id.* at 22-23. The court believes that this issue involves fact determinations more appropriately reserved for a jury, rather than for the court through summary judgment.

First, the court notes that Plaintiff has not made clear what additional or unpaid living expenses he seeks through this action, since the parties state that State Farm paid for living expenses through March 2004, and the Sullivans moved back into the Cochran Chapel home in 2004. That question aside, it appears that State Farm's first argument goes to the reasonableness of the living expenses for which it has *already* paid, not the reasonableness of any living expense following March 2004, for which it did not pay. Since Sullivan brings a breach of contract suit for additional living expenses not paid, the reasonableness of the prior-paid expenses is not at issue in this case. Whether the Sullivans incurred necessary and reasonable living expenses following March 2004 has not been established by the summary judgment evidence, and is a genuine issue of a material fact

for the jury to determine. Second, State Farm argues that it has paid for a reasonable amount of time for the Sullivans to relocate, and that they did permanently relocate; however, Sullivan presents contradictory evidence that his family moved between several residences while the Cochran Chapel house was rehabilitated, and that he and his wife moved back into the home in 2004. When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves,* 530 U.S. at 150. The court believes Sullivan has raised a genuine issue of a material fact as to whether he permanently relocated. Accordingly, the court will not grant summary judgment on Sullivan's breach of contract claim for additional living expenses.

Additionally, State Farm's brief states that Sullivan also wishes to recover for additional policy payments to cover reconstruction costs. Def. Br. at 24-25. Sullivan's First Amended Complaint does not clearly state that he seeks additional policy payments for reconstruction, nor does his summary judgment response address this point. As Sullivan has provided this court with no evidence on this issue, the court agrees with State Farm that any claim by Sullivan for additional reconstruction costs is barred by the statute of limitations, because State Farm notified him on August 26, 2003, that it had made final payment on all of the damage claims. Thus, any claim that State Farm's payment for the mold damage was insufficient accrued on that date. As Sullivan failed to bring this action by August 26, 2005, two years after its accrual, it is barred by the applicable two-year statute of limitations.

### D. No Evidence of Bad Faith or Damages

State Farm's final two grounds for summary judgment rest on its contentions that Sullivan has no evidence that State Farm acted in bad faith, and no evidence of damages to sustain his breach of contract claim. Def. Br. at 25, 29. The court need not address State Farm's no-evidence-of-bad faith argument, because it has already determined that Sullivan is collaterally estopped from asserting his statutory bad faith claims. The court need not address State Farm's no-evidence-of-damages argument, because it has already determined that Sullivan may proceed on his claim for additional living expenses.

The parties' briefs address other damages that Sullivan claims, including the reduced market value of a Colorado property in which Sullivan had an interest, but went into foreclosure. *See* Def. Br. at 36; Pl. Br. at 26. Sullivan alleges that State Farm's failure to promptly pay him for the Cochran Chapel damages caused him to fall behind on his payments for the Colorado Property. Pl. Br. at 26. State Farm argues that Sullivan cannot recover for this remote, speculative and conjectural damage, as a matter of law. Def. Br. at 36-38. The court agrees. The court has determined that Sullivan may proceed on his breach of contract and related statutory penalty claims for State Farm's alleged failure to pay additional living expenses due under the policy. This claim, however, bears no relation to Sullivan's lost profits as a result of his failure to make payments on his Colorado investment. As the interpleader proceeding established, Sullivan is estopped from making any statutory claims that the insurance proceeds for mold damage were not paid promptly. Accordingly, Sullivan may not recover for any damages arising out of those claims.

**Memorandum Opinion and Order – Page 17**

## IV. OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Sullivan filed Plaintiff's Objections to Defendant State Farm Lloyds' Exhibits Attached to State Farm Lloyds' Motion for Summary Judgment on December 14, 2006. Defendant State Farm filed Objections to the Summary Judgment Affidavit of John Sullivan on December 28, 2006. Sullivan objected to nine of State Farm's summary judgment exhibits on the grounds that the information contained hearsay, and that no proper predicate had been laid for those documents. State Farm objected to John Sullivan's affidavit on the ground that Sullivan was not qualified to give his opinion about the reasonable costs of landscaping and reconstruction in order to support his claim for damages. The court **overrules** Sullivan's objections because, in reaching its decision, it has not relied on any inadmissible evidence. The court **overrules as moot** State Farm's objections to Sullivan's affidavit, since the court has determined that Sullivan may proceed only on his claims for additional living expenses, and cannot seek other damages for claims precluded by collateral estoppel.

## V. CONCLUSION

For the reasons stated herein, the court determines that genuine issues of material fact exist as to Sullivan's clam for breach of contract for additional living expenses, and his related statutory claim for penalties; however, Sullivan's remaining claims for statutory penalties for State Farm's alleged bad-faith conduct are barred by collateral estoppel. Accordingly, the court **grants in part** and **denies in part** Defendant State Farm Lloyds' Motion for Summary Judgment. Sullivan's claims for bad-faith violations of the Texas Insurance Code and DTPA, arising out of State Farm's inclusion of Pacific Coast as a payee on insurance checks, are **dismissed with prejudice**. Sullivan's claim for breach of contract for additional living expenses due under his policy, and the related

statutory claim for penalties, remain for trial. Additionally, the court **overrules** Plaintiff's Objections to Defendant State Farm Lloyds' Exhibits Attached to State Farm Lloyds' Motion for Summary Judgment; and **overrules as moot** Defendant State Farm Lloyds' Objections to the Summary Judgment Affidavit of John Sullivan.

   **It is so ordered** this 24th day of May, 2007.

                                              *Sam A. Lindsay*
                                              Sam A. Lindsay
                                              United States District Judge