IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JOHN SULLIVAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-2000-L** |
| | § | |
| **STATE FARM LLOYDS, PACIFIC** | § | |
| **COAST INVESTMENT COMPANY, and** | § | |
| **PACIFIC COAST INVESTMENT,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment Against Plaintiff, filed November 13, 2006; and Plaintiff's Objections to Defendant Pacific Coast's Exhibits Attached to Pacific Coast's Motion for Summary Judgment, filed December 22, 2006. After reviewing the motion, responses, reply, record, and applicable law, the court **grants** Defendants Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment Against Plaintiff; and **overrules** Plaintiff's Objections to Defendant Pacific Coast's Exhibits Attached to Pacific Coast's Motion for Summary Judgment.

## I. BACKGROUND

This is an insurance dispute brought by Plaintiff John Sullivan ("Sullivan") against two sets of defendants: State Farm Lloyds ("State Farm"), and Pacific Coast Investment Company and Pacific Coast Investment (collectively, "Pacific Coast").[1] As the events giving rise to this action

---

[1] Sullivan names both Pacific Coast Investment Company and Pacific Coast Investment as Defendants, however, Defendants state they are the same entity and refer to the two named defendants as one defendant. *See* Defendants Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment ("Def. Mot.") at 1. The court will do the same.

**Memorandum Opinion and Order – Page 1**

began nearly six years ago, the court will briefly summarize the relevant facts here, and provide additional details as it addresses each ground for summary judgment.  Sullivan and his wife, Frances Sullivan, (collectively, the "Sullivans")[2] owned a home at 4252 Cochran Chapel Road in Dallas, Texas, insured by State Farm.  In October 2001, the Sullivans filed insurance claims for mold damage to their home.  During the course of an investigation into the damage, State Farm opened a total of four claims and assigned four different claims numbers.  In February 2002, while State Farm was still investigating the claims, and before it made any payments, the Sullivans sold the home to the Cochran Corporation, a company John Sullivan owned as the sole shareholder and president.  The sale was financed by a $4 million mortgage from Pacific Coast and another group, and closed on February 19, 2002.

In May 2002, State Farm made two payments for two of the mold claims, totaling more than $381,000, through two checks made payable to John and Frances Sullivan, and Pacific Coast.  Both checks were endorsed by all the parties.  In April 2003, State Farm issued two more checks, totaling more than $253,000, again made payable to John and Frances Sullivan, and Pacific Coast.  This time, however, Sullivan's attorney contacted State Farm asking that Pacific Coast be removed as a payee, because Pacific Coast was refusing to endorse the checks over to the Sullivans, even though it had no interest in the insurance payments.  As State Farm prepared to issue more checks in satisfaction of the mold claims, it had several contacts with Sullivan's attorney.  State Farm indicated it would file an interpleader to have a court determine which parties had an interest in the funds, but Sullivan's attorney indicated he would prefer to simply have the checks made payable to

_____

[2]The court makes multiple references to the Sullivans, jointly, because they originally filed this lawsuit in state court on September 12, 2005, as joint owners of the insurance policy at issue.  After the suit was removed to federal court, the Sullivans removed Frances Sullivan as a plaintiff through the First Amended Complaint filed on May 30, 2006.  John Sullivan now proceeds as the sole plaintiff in this case.

**Memorandum Opinion and Order – Page 2**

all the entities claiming an interest to the funds, including the Sullivans, Pacific Coast, the Cochran Corporation, the reconstruction contractor and hired adjuster.  State Farm agreed, initially, to keep the matter out of court, but on September 11, 2003, Pacific Coast notified State Farm that the Cochran Corporation had filed for Chapter 11 bankruptcy, and Pacific Coast claimed an interest in the insurance proceeds owed to the Cochran Corporation.  State Farm then filed an interpleader action in the bankruptcy case on September 25, 2003, and later paid $1,163,982.62 of insurance proceeds into the registry of the bankruptcy court.

The Sullivans opposed the interpleader, filed motions in the bankruptcy court opposing the deposit of the funds into the court's registry, asked the bankruptcy court to dismiss State Farm's interpleader, and opposed State Farm's motion for discharge.  By May 2004, however, the Sullivans signed an agreed order stipulating that the interpleader was proper, and also signed an agreed order to take nothing from the court's distribution of the funds, which included payments of $375,972 to Pacific Coast, $500,000 to the Cochran Corporation, and the remainder to the contractor and hired adjuster.

The Sullivans filed this suit against State Farm and Pacific Coast on September 12, 2005, in state district court.  State Farm removed the action to this court on diversity grounds on October 7, 2005.  The First Amended Complaint, which removed Frances Sullivan as a plaintiff, is the live pleading in this suit.  Sullivan brings four claims in the First Amended Complaint, but only one is against Pacific Coast.  Specifically, Sullivan claims that Pacific Coast tortiously interfered in his contract with State Farm by claiming an interest in the insurance proceeds that were later interpleaded into the bankruptcy court's registry ($1,163,982.62), and demanding that its name not be removed as a payee on the insurance checks.  As Pacific Coast has filed this summary judgment

motion, the court does not address Sullivan's claims against State Farm in this order.[3]  Before the court analyzes each of Pacific Coast's grounds for summary judgment, it will first set forth the applicable law.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to

---

[3]Those claims were addressed by the court in a separate order on May 24, 2007.

**Memorandum Opinion and Order – Page 4**

defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513

U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence

in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*,

136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search

of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see

also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S.

832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing

laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed

fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a

summary judgment motion. *Id.*  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of

proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.  ANALYSIS

### A.  Introduction

Pacific Coast raises several grounds for summary judgment.  First, it contends that Sullivan's

claim is barred by a two-year statute of limitations for tortious interference claims.  Second, Pacific

Coast argues that Sullivan has no evidence to prove the necessary elements of his cause of action.

Third, Pacific Coast contends that Sullivan's claim is barred by collateral estoppel, because the

Sullivans signed an agreed order determining that the interpleader was properly filed, and that they

were not the sole owners of the insurance proceeds.  Fourth, Pacific Coast contends that Sullivan's

claim is barred by res judicata, because the prior interpleader action determined that Pacific Coast was entitled to a portion of the insurance proceeds, but that the Sullivans were not.  Fifth, Pacific Coast argues that Sullivan's claim is barred by his prior election of remedies through the interpleader action, because his agreement in the prior interpleader to distribute a substantial portion of the insurance proceeds to Pacific Coast is inconsistent with his position in this case.  Sixth, Pacific Coast alleges that Sullivan's claim is barred by the common law doctrine of estoppel because Sullivan cannot take a position inconsistent from his position in the prior interpleader action. Finally, Pacific Coast alleges that Sullivan's claim is also barred by the common law doctrine of waiver, because he waived any personal interest he had in the insurance proceeds as a part of the Cochran Corporation reorganization plan adopted by the bankruptcy court.  Several of Pacific Coast's grounds for summary judgment overlap, and rest on the parties' agreed disposition of the prior interpleader action.  The court determines that, as a matter of law, Sullivan cannot prove, or raise a genuine issue of a material fact regarding, the necessary elements of his cause of action; therefore, it will address this argument before addressing Pacific Coasts's other related grounds for summary judgment.

### B.  Necessary Elements of Tortious Interference Claim

Pacific Coast contends that it is entitled to summary judgment because Sullivan has no evidence to establish the necessary elements of his tortious interference with contract claim, specifically that Pacific Coast intentionally interfered with Sullivan's contract with State Farm. Brief In Support of Defendants Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment Against Plaintiff ("Def. Br.") at 3-6.  Pacific Coast argues that it, initially, did not know that its name had been added as a payee, and that it took no willful or intentional action

to force State Farm to include it as a payee. *Id.* at 4-5.  Pacific Coast also argues that Sullivan cannot prove proximate cause or damages, because any damages suffered as a result of Pacific Coast's assertion of interest in the insurance proceeds were suffered by the Cochran Corporation, not the Sullivans. *Id.* at 6.  Sullivan argues that Pacific Coast did, in fact, tortiously interfere with his contract with State Farm, because it had no legal interest in the insurance proceeds, and its assertion of interest on September 11, 2003, after the Cochran Corporation filed for bankruptcy, caused State Farm to breach Sullivan's insurance contract by filing an interpleader action.  Plaintiff John Sullivan's Response to Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment ("Pl. Br.") at 11-13.  Sullivan also argues that he, personally, incurred the costs of repairing the Cochran Chapel property and, therefore, suffered damages as a result of Pacific Coast's interference. *Id.* at 13-14.  The court determines that Pacific Coast is entitled to summary judgment, because Sullivan cannot establish the necessary elements of his tortious interference claim.  The court reaches this conclusion based, in part, on Pacific Coast's no-evidence arguments, and in part on Pacific Coast's arguments relating to common law estoppel and waiver.

To establish a claim for tortious interference under Texas law, Sullivan must show that (1) a contract existed between him and State Farm; that (2) Pacific Coast willfully and intentionally interfered with that contract; (3) the interference proximately caused Sullivan's damage; and (4) Sullivan suffered actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  In this case, Sullivan cannot establish the elements of causation and damages because of the position he took in the prior interpleader action.  Although Pacific Coast does not use the term judicial estoppel, it is effectively arguing that Sullivan is precluded from arguing that he suffered any actual damage or loss because he took a position in the prior interpleader inconsistent with his

current claim for damages.  The court determines that Sullivan's prior inconsistent position in the interpleader judicially estops him from arguing that he suffered any actual damage or loss, or that any damage he seeks was proximately caused by Pacific Coast's action.

Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation.  *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004); *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000).  It applies "to protect the integrity of the courts–preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it."  *Ahrens*, 205 F.3d at 833 (quoting *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 303 (5th Cir. 1998)).  The doctrine is intended to prevent parties "from playing fast and loose with the courts to suit the exigencies of self interest."  *Id.* (quoting *In re Coastal Plains, Inc.*, 179 F.3d 194, 205 (5th Cir. 1999)).  The doctrine may only be applied where (1) the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that previous position.  *Ahrens*, 205 F.3d at 833 (citing *Coastal Plains*, 179 F.3d at 206).  Additionally, "because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required."  *Superior Crewboats*, 374 F.3d at 334 (internal citation omitted).

In the prior interpleader action, the Sullivans initially claimed an interest in the insurance proceeds contrary to Pacific Coast's interests and argued that the interpleader action was improperly filed.  *See* Appendix In Support of Defendant State Farm Lloyd's Motion for Summary Judgment ("State Farm App.") at 150-51.[4]  In a hearing before the bankruptcy court, the Cochran Corporation

_____

[4]Sullivan cites to State Farm's summary judgment appendix in his response to Pacific Coast's summary judgment motion, and the court shall do the same.  The court recognizes that many of the documents filed in State Farm's voluminous appendix, relevant to the prior interpleader action and State Farm's summary judgment motion, are likewise relevant to this summary judgment motion.  The court appreciates the parties'

and the Sullivans argued that the interpleader was improper, in part, because the Cochran Corporation had disclaimed any interest in the insurance proceeds, and that the Sullivans were entitled to the proceeds.  Def. App. Ex. C at 8-13.  Eventually, however, the Sullivans signed an agreed order stipulating that the interpleader was properly filed, and an agreed order distributing $375,972 of the insurance proceeds to Pacific Coast, $500,000 to the Cochran Corporation, the remainder to the reconstruction contractor and hired adjuster, and nothing to the Sullivans.  State Farm App. at 168-70, 175-77.  The court determines that, in the prior interpleader action, Sullivan took a position clearly inconsistent with his current position that Pacific Coast had no legal interest in the insurance proceeds.  By agreeing to a distribution of the proceeds that included a significant payment to Pacific Coast, but none to the Sullivans, Sullivan convinced the bankruptcy court that Pacific Coast *did* have an interest in the proceeds, but that he and his wife did not.  Accordingly, Sullivan's prior inconsistent position, as evidenced by the bankruptcy court's agreed orders, judicially estops Sullivan from now claiming any damages through his tortious interference claim.

As a result of judicial estoppel, Sullivan cannot establish the element of damages to support his tortious interference claim.  Sullivan does not state in his First Amended Complaint what damages he suffered; however, his response states that he, personally, incurred construction and landscape expenses in excess of $100,000 for the Cochran Chapel property.[5]  Such expenses, even

---

reference to these materials and limiting their duplication of some of those records in separate appendices.

[5]Sullivan's response also states that he "is not seeking any personal interest in State Farm Lloyds' insurance proceeds," but is "seeking damages that are much broader than any personal interest in the State Farm Lloyds' insurance proceeds that occurred as a result of the conduct of State Farm and Pacific Coast that have nothing to do with either the interpleader action or Cochran's Bankruptcy Petition."  Pl. Br. at 9.  The court sees no distinction between the insurance proceeds and the damages Sullivan now seeks, because any damages he claims must arise out of Pacific Coast's alleged interference with State Farm's payment of insurance proceeds to him.

**Memorandum Opinion and Order – Page 9**

if paid for by Sullivan, personally, are not recoverable as damages in this case, because the prior interpleader established that the actual owner of the house, the Cochran Corporation, could recover for mold damage to the house, but not the Sullivans.  Sullivan is judicially estopped from now arguing otherwise, as he convinced the bankruptcy court to sign agreed orders distributing $500,000 to the Cochran Corporation, $101,786.59 directly to the construction contractor, and nothing to the Sullivans.  Sullivan, therefore, took a prior position that such a distribution was appropriate.  To now claim that he personally incurred damages that should have been compensated for separately from the Cochran Corporation is inconsistent.  Accordingly, Sullivan is judicially estopped from now claiming that he suffered damages in the form of construction or landscape expenses, and he cannot establish this necessary element of his tortious interference claim.

Even if Sullivan could establish the element of damages, judicial estoppel precludes Sullivan from establishing the element of causation.  The Sullivans, through an agreed order, persuaded the bankruptcy court that they believed the interpleader was properly filed, and that distributions of $375,972 to Pacific Coast and $500,000 to the Cochran Corporation were appropriate.  By now claiming that Pacific Coast tortiously interfered with his contract with State Farm because Pacific Coast had no legal interest in the insurance proceeds, Sullivan is taking an inconsistent position. He cannot agree in one proceeding that State Farm properly included Pacific Coast as a payee on the insurance checks, and then sue Pacific Coast for tortiously claiming an interest in those proceeds. Accordingly, Sullivan's act of agreeing in the prior proceeding that Pacific Coast had an interest in the proceeds–his prior inconsistent position–has caused him whatever alleged damages he now seeks, not Pacific Coast's rightful assertion of an interest in the proceeds.  Since Sullivan is

**Memorandum Opinion and Order – Page 10**

judicially estopped from presenting evidence of causation and damages, he cannot prove the necessary elements of his tortious interference claim, and summary judgment is appropriate.

### C.  Statute of Limitations

Pacific Coast argues that a two-year statute of limitations for tortious interference claims bars Sullivan's claim, because State Farm first included Pacific Coast as a payee on insurance checks issued in April 2003, more than two years before Sullivan filed this action on September 12, 2005. Def. Br. at 2.  Sullivan argues that his cause of action did not accrue until September 24, 2003, when State Farm actually filed its interpleader action in bankruptcy court.  Pl. Br. at 3-4.  Since the court has already determined that Sullivan is judicially estopped from bringing his claim against Pacific Coast, it need not determine whether Sullivan's claim is also barred by the statute of limitations.

### D.  Collateral Estoppel and Res Judicata

Pacific Coast argues that collateral estoppel or res judicata bars Sullivan from bringing his claim for tortious interference because these issues were already litigated and resolved through the agreed order on State Farm's interpleader action in bankruptcy court.  Def. Br. at 6-11.  Sullivan argues that collateral estoppel does not apply because the only issue resolved by the interpleader was State Farm's liability with respect to the interpled insurance proceeds, not Pacific Coast's liability for tortious interference.  Pl. Br. at 4-5.  Sullivan also argues that res judicata does not apply because he could not have raised a claim for tortious interference in the prior interpleader action.  Pl. Br. at 8.  The court has already determined that Sullivan is judicially estopped from bringing his tortious interference claim against Pacific Coast; however, the court concludes, alternatively, that Sullivan's claim is also barred by collateral estoppel and res judicata.

Collateral estoppel precludes the relitigation of issues actually adjudicated, and essential to the judgment, in a prior suit between the parties on a different cause of action. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425. 436 (5th Cir. 2000).  Res judicata, more broadly, extinguishes all related and relevant claims between the same parties that could have been brought in a prior suit, whether or not those issues were raised in the prior suit. *Id.* at 436.  In a diversity suit, the forum state's law governs the collateral-estoppel or res-judicata effect of a prior state-court judgment. *See*, *e.g.*, *Breeland v. Security Ins. Co. of New Haven, Conn.*, 421 F.2d 918 (5th Cir. 1969).  Under Texas law, whether the doctrine of collateral estoppel applies to a specific issue depends upon whether "the fact determined in the prior suit was essential to the judgment in the prior suit, and whether the necessary requirement of privity exists between the parties." *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 176 (Tex. App.–El Paso 1996, writ denied).

Under Texas law, res judicata bars subsequent suits arising out of the same subject matter of a previous suit, and which, "through the exercise of diligence, could have been litigated in a prior suit." *Schneider Nat. Carriers, Inc. v. Bates*, 174 S.W.3d 264, 278 (Tex. 2004).  Furthermore, a party may assert affirmative defenses of res judicata or collateral estoppel "regardless of whether the underlying judgment was an agreed judgment or a judgment rendered after a fully adversarial trial to a fact finder." *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 888 (Tex. App.–Dallas, 2001, pet. denied); *Forbis v. Trinity Universal Ins. Co. of Kansas, Inc.*, 833 S.W.2d 316, 319 (Tex. App.–Fort Worth 1992, writ dism'd) ("An agreed judgment is more than a mere contract.  It has the same degree of finality and binding force as one rendered by a court at the conclusion of adversary proceedings.") (internal citations omitted).

**Memorandum Opinion and Order – Page 12**

In this case, the parties do not dispute that the required element of privity is satisfied; they only argue over whether Sullivan's tortious interference claim against Pacific Coast was conclusively decided, or could have been raised, through the prior proceeding.  Sullivan contends that the agreed judgment from the interpleader proceeding only discharged State Farm from claims specifically asserted by the interpleader defendants against the interpled insurance proceeds. Pl. Br. at 5.  Sullivan argues that the judgment does not preclude this action, which contends that Pacific Coast tortiously interfered with Sullivan's contract with State Farm, necessitating the interpeader action.  *Id.* at 5-6.  Pacific Coast, on the other hand, argues that Sullivan claimed an interest in the insurance proceeds through the prior proceeding, contrary to Pacific Coast's interest, but in the end agreed that the interpleader was proper and that Pacific Coast was entitled to a portion of the proceeds.  Def. Br. at 7-8.  Pacific Coast argues that the prior proceeding, thus, conclusively settled the issue of whether Pacific Coast could rightfully claim an interest in the insurance proceeds.  *Id.* The court agrees.

Under Texas law, a defendant is justified in interfering with a plaintiff's contract if it exercises (1) its own legal rights, or (2) a good-faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken.  *Prudential Ins. Co. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000); *Friendswood Dev. Co. v. McDade & Co.*, 925 S.W.2d 280, 282 (Tex. 1996); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991).  By agreeing to a distribution of the interpled funds that included a $375,972 payment to Pacific Coast, but none to the Sullivans, Sullivan necessarily acknowledged that Pacific Coast was a proper party to the interpleader action, and that it, not the Sullivans, had a legal interest in the insurance proceeds.  The prior interpleader, and the orders entered by the bankruptcy court, thus, conclusively established that

Pacific Coast had a legal interest in the insurance proceeds, and any claim by Sullivan that Pacific Coast had no such interest could have been and should have been raised during the interpleader. Accordingly, the court determines that Sullivan's claim for tortious interference is also barred by collateral estoppel and res judicata.

### E.  Prior Election of Remedies, Common-Law Estoppel and Waiver

The court has already determined that Sullivan's claim is barred by judicial estoppel, collateral estoppel and res judicata.  Accordingly, it does not separately address Pacific Coast's arguments here.

## IV.  OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Sullivan filed Plaintiff's Objections to Defendant Pacific Coast's Exhibits Attached to Pacific Coast's Motion for Summary Judgment on December 22, 2006.  Sullivan objected to eight of Pacific Coast's summary judgment exhibits on the grounds that the information contained hearsay, and that no proper predicate had been laid for those documents.  The court **overrules** Sullivan's objections because, in reaching its decision, it has not relied on any inadmissible evidence.  The court did take into account the transcript of a hearing conducted by the bankruptcy court relating to the interpleader, to which Sullivan objects.  The court determines, however, that the transcript is not hearsay, as any statement made by Sullivan's attorney during that proceeding was a statement by a person authorized by him to make such statements, and constitute an admission by a party opponent pursuant to Fed. R. Evid. 801(d)(2).

## V.  CONCLUSION

For the reasons stated herein, the court determines that no genuine issues of material fact exist as to Sullivan's claim for tortious interference, and Pacific Coast is entitled to summary

**Memorandum Opinion and Order – Page 14**

judgment as a matter of law.  Sullivan is judicially estopped from claiming that he suffered damages as a result of Pacific Coast's assertion of an interest in the State Farm insurance proceeds. Alternatively, Sullivan's claim is barred by collateral estoppel and res judicata.  Accordingly, the court **grants** Defendants Pacific Coast Investment Company and Pacific Investment's Motion for Summary Judgment Against Plaintiff.  Sullivan's claims for tortious interference, arising out of Pacific Coast's claim to a portion of the insurance proceeds, are **dismissed with prejudice**. Additionally, the court **overrules** Plaintiff's Objections to Defendant Pacific Coast's Exhibits Attached to Pacific Coast's Motion for Summary Judgment.

    **It is so ordered** this 6th day of June, 2007.


Sam A. Lindsay
United States District Judge