IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN SULLIVAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:05-CV-2000-L** |
| | § | |
| **STATE FARM LLOYDS, PACIFIC** | § | |
| **COAST INVESTMENT COMPANY, and** | § | |
| **PACIFIC COAST INVESTMENT,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant State Farm Lloyds' Second Motion for Summary Judgment, filed September 17, 2007. After reviewing the motion, response, reply, record, and applicable law, the court **grants** Defendant State Farm Lloyds' Second Motion for Summary Judgment.

**I.    BACKGROUND**

This action is an insurance dispute brought by Plaintiff John Sullivan ("Sullivan") against two sets of defendants: State Farm Lloyds ("State Farm"), and Pacific Coast Investment Company and Pacific Coast Investment (collectively, "Pacific Coast"). Sullivan and his wife, Frances Sullivan, (collectively, the "Sullivans")[1] owned a home at 4252 Cochran Chapel Road in Dallas, Texas, insured under a policy (the "Policy") issued by State Farm. In October 2001, the Sullivans filed insurance claims for mold damage to their home. During the course of an investigation into the damage, State Farm opened a total of four claims and assigned four different claims numbers.

---

[1] The court makes multiple references to the Sullivans, jointly, because they originally filed this lawsuit in state court on September 12, 2005, as joint owners of the insurance policy at issue. After the suit was removed to federal court, the Sullivans removed Frances Sullivan as a plaintiff through the First Amended Complaint filed on May 30, 2006. John Sullivan now proceeds as the sole plaintiff in this case.

**Memorandum Opinion and Order – Page 1**

In February 2002, while State Farm was still investigating the claims, and before it issued any payments, the Sullivans sold the home to the Cochran Corporation, a company John Sullivan owned as the sole shareholder and president. The sale was financed by a $4 million mortgage from Pacific Coast and another group, and closed on February 19, 2002.

The Sullivans filed this suit against State Farm and Pacific Coast on September 12, 2005, in state district court. On October 7, 2005, State Farm removed the action to this court because diversity of citizenship existed and the amount in controversy exceeded $75,000, exclusive of interest and costs. The First Amended Complaint, which removed Frances Sullivan as a plaintiff, is the live pleading in this suit. Sullivan brings three claims against State Farm: (1) breach of contract, in violation of Texas Insurance Code, article 21.55, section 3(f), for failing to pay the entire amount of insurance benefits under the policy[2]; (2) violations of The Texas Insurance Code, article 21.21, for engaging in unfair or deceptive acts[3]; and (3) violations of the Texas Deceptive Trade Practices Act ("DTPA") for failure to effectuate a prompt, fair and equitable settlement of his claim. The fourth and final claim asserted by Sullivan in the First Amended Complaint is one for tortious interference against Pacific Coast.

On November 13, 2006, Pacific Coast moved for summary judgment on Sullivan's claim against it. On June 6, 2007, the court granted Pacific Coast's summary judgment motion and

---

[2] Plaintiff's First Amended Complaint specifically cites to this article of the Texas Insurance Code; however, Texas has repealed article 21.55 and replaced section 3(f) with Tex. Ins. Code Ann. § 542.058 (Vernon Supp. 2007). All future references to violations of this portion of the Texas Insurance Code will refer to this revised statute.

[3] Plaintiff's First Amended Complaint specifically cites to this article of the Texas Insurance Code; however, Texas has repealed article 21.21 and replaced it with Tex. Ins. Code Ann. § 541.060. All future references to violations of this portion of the Texas Insurance Code will refer to this revised statute.

**Memorandum Opinion and Order – Page 2**

dismissed with prejudice Sullivan's claim against Pacific Coast for tortious interference with a contract.

On November 14, 2006, State Farm moved for summary judgment on Sullivan's claims against it. On May 24, 2007, the court granted State Farm's summary judgment motion as to Plaintiff's claims for bad faith and denied it as to Plaintiff's breach of contract claim and the related statutory claim for delay in payment. State Farm now moves the court for summary judgment on Plaintiff's remaining claim for breach of contract and the related statutory claim for delay in payment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

III. ANALYSIS

    A. **Breach of Contract**

Plaintiff contends that State Farm breached the Policy when it ceased making additional living expenses ("ALE") payments in March 2004. State Farm argues that Sullivan's breach of

contract claim fails because the living expenses incurred by Sullivan after March 2004 were not a covered loss under the Policy. The court agrees with State Farm.

The Policy states that "[i]f a loss caused by a Peril Insured Against under Section I makes the **residence premises** wholly or partially untenantable," State Farm will provide ALE coverage as set forth in the Policy. Def. App. 18 (emphasis in original). The plain language of the Policy forecloses ALE coverage after Sullivan sold the residence premises in February 2002, because the sale did not constitute a loss caused by a peril insured against under the Policy. *Id.* at 9–11. State Farm was not contractually obligated to provide ALE coverage after Sullivan sold the residence premises in February 2002. Therefore, it did not breach the contract by ceasing ALE payments in March 2004. Although Sullivan makes several arguments to the contrary, the court finds none to be persuasive.

First, Sullivan contends that State Farm continued to make ALE payments after it knew that he had sold the residence premises. That State Farm mistakenly continued to make ALE payments after it was no longer contractually obligated to do so, neither alters the agreement between the parties nor provides coverage where none otherwise exists. *See Asfahani v. State Farm Mut. Auto Ins. Co.*, No. EP-05-CA-110-FM, 2006 WL 488401, at *4 (W.D. Tex. Jan. 13, 2006); *See, e.g., Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602 (Tex. 1988) (holding "[t]he doctrine of estoppel cannot be used to create insurance coverage when none exists by the terms of the policy"). State Farm's knowledge that Sullivan sold the residence premises is of no moment. Under the Policy, State Farm was obligated to pay ALE only until February 2002, but made payments until March 2004. Therefore, it has more than satisfied its obligation to make ALE payments to Sullivan and has not breached the Policy.

Second, Sullivan contends that the terms of the Policy were modified by an oral agreement between the parties such that State Farm would pay $29,500 every month, without verification and documentation of his actual expenses, until repairs to the residence premises were completed. He argues that this oral modification is enforceable because it is supported by adequate consideration and he has fully performed his obligation under the modification. The Policy states: "Changes in this policy may be made and perils may be added only by attaching a written endorsement properly executed by our authorized agent." Def. App. 18. The Policy allows for modifications only by written endorsement executed by an authorized agent. Because Sullivan has failed to come forward with such a written endorsement, the court finds that there was no enforceable modification to the Policy. Therefore, he was entitled to the agreed upon ALE benefits only to the extent allowable by the Policy. After Sullivan sold the residence premises, he was no longer entitled to ALE benefits because his loss was no longer caused by an insured peril under the Policy. State Farm made ALE payments long after ALE coverage ended under the Policy Therefore, it has more than satisfied its obligation and has not breached the Policy.

Third, Sullivan contends that because the sale of the residence premises was actually a refinance transaction, ALE coverage under the Policy did not end upon the sale. He concedes that the residence premises was "transferred into a single asset non homestead entity." Pl.'s Resp. Br. 7. According to Sullivan, however, because he owned the entity to which the residence premises was transferred and retained the right to live in it upon its completion, he is the beneficiary of the Policy. Whether Sullivan characterizes the transaction as a sale or a refinance, the result of the transaction was that he no longer owned the residence premises. As stated previously, because the sale did not constitute a loss caused by a peril insured against under the Policy, he was no longer

**Memorandum Opinion and Order – Page 6**

entitled to the ALE benefits under the Policy. Therefore, State Farm did not breach the Policy by ceasing ALE payments in March 2004. Accordingly, there is no genuine issue of material fact as to Sullivan's breach of contract claim, and State Farm is entitled to judgment as a matter of law on this claim.

### B. Delay in Payment

Pursuant to Tex. Ins. Code Ann. § 542.058, Sullivan also seeks recovery for State Farm's delay in making ALE payments after March 2004. Because the court has determined that State Farm was not contractually obligated to make ALE payments after Sullivan sold the residence premises in February 2002, State Farm is not subject to delay in payment penalties. Tex. Ins. Code Ann. § 542.058. Therefore, there is no genuine issue of material fact as to Sullivan's delay in payment claim, and State Farm is entitled to judgment as a matter of law on this claim.

## V. CONCLUSION

For the reasons stated herein, the court determines that no genuine issues of material fact exist as to Sullivan's claim for breach of contract for additional living expenses or his related statutory claim for penalties. Accordingly, the court **grants** Defendant State Farm Lloyds' Motion for Summary Judgment. Sullivan's claim for breach of contract for additional living expenses due under his policy and the related statutory claim for penalties are **dismissed with prejudice**.

**It is so ordered** this 15th day of April, 2008.

Sam A. Lindsay
United States District Judge